RECEIVED
IN LAKE CHARLES, LA
MAR 22 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DOCKET NO. 2:05 CR 20200-003 |
| VS. | : | JUDGE MINALDI |
| CURTIS WAYNE PEELER | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Presently before the court are the defendant's objections to the Presentence Report ("PSR") prepared by the Probation Department. The court notes that counsel for the defendant received the PSR on July 26, 2006. Objections were due fifteen days from that date, or by August 10, 2006. These objections were not received until January, 2007. Counsel is advised that, in the future, late objections to PSR's may not be considered by the court, or the court may impose sanctions for their untimely filing.

Objections 1, 2, 3, and 4 concern factual disputes that have no bearing on the guideline calculations and therefore do not require a ruling by the court.

The defendant denies the allegations of ¶10. Probation states that this paragraph outlines information obtained from the occupants of the second hotel room, both of whom indicated that they had received methamphetamine from the defendant. A portion of this information was included in the Factual Stipulation. The Presentence Report ("PSR") generally bears sufficient indicia of reliability to be considered as evidence by the court in resolving factual disputes. *U.S. v. Valencia*, 44 F.3d 269 (5th Cir.(La.) Jan 26, 1995)(No. 94-40063); *See United States v. Slaughter*, 238 F.3d

580, 585 (5th Cir.2000) ("For sentencing purposes, the district court may consider any relevant evidence, including uncorroborated hearsay statements, if the information has a 'sufficient indicia of reliability to support its probable accuracy.' "); *U.S. v. Rangel,* 149 Fed.Appx. 254, 257 (C.A.5 (Tex.),2005). It is proper for the district court to rely upon the PSR's construction of evidence to resolve a factual dispute, rather than relying on the defendant's version of the facts. *U.S. v. Montoya-Ortiz,* 7 F.3d 1171 (5th Cir.(Tex.) Nov.12, 1993)(No. 92-8204), citing *U.S. v. Robins,* 978 F.2d 881, 889 (5th Cir. (Tex.) Nov. 20, 1992)(No. 91-1850). The burden is on the defendant to present evidence to refute the facts stated in the PSR. The defendant seeks to exclude statements against him, and he has indicated that the correct dates can be corroborated. He will have the opportunity to do so at sentencing.

¶12 of the PSR details the arrest of co-defendant Jessie Ortiz. The defendant objects stating that he does not know if these facts are true. This does not require a ruling by the court.

The defendant objects to ¶13 stating that there is no evidence that he was involved in any drug activity while he was in possession of the handgun. ¶13 summarizes a statement by Jessie Ortiz in which he advised that he sold methamphetamine to Peeler three days prior to his arrest. Ortiz advised that he saw Peeler in possession of a .40 caliber handgun on "Monday." There was also a lockbox that belonged to the defendant that contained two .40 caliber handguns and methamphetamine. This objection is overruled.

The defendant alleges that the statements set forth in ¶¶14 and 15 were made pursuant to a *Kastigar* letter and that the use of this information penalized the defendant for not having counsel prior to the issuance of the federal warrants. The FD-302 statement form indicates that Peeler gave the statement outlined in ¶14 following his arrest, after being advised of his *Miranda* rights. There

2

is no evidence that the information provided was part of any cooperation agreement with the government.

Under § 1B1.8, when a defendant agrees to provide information concerning the unlawful activities of others, and "as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in that agreement." U.S.S.G. § 1B1.8. The guideline commentary indicates that § 1B1.8 only applies when there is a cooperation agreement relating "to the provision of information concerning the unlawful activities of others." *Id.* at cmt. n. 6. The scope of § 1B1.8 includes self-incriminating statements made to a probation officer after entering into this type of cooperation agreement. *Id.* at cmt. n. 5; *U.S. v. Aguilera*, 106 Fed.Appx. 892, 895-896, 2004 WL 1777081,**4 (C.A.5. (Tex.)). Peeler's statement was made incident to arrest. There was no viable plea agreement at the time of the statement. This objection is overruled.

The defendant objects to ¶16 of the PSR stating that this statement is inconsistent with ¶15. ¶16 is a summary of a statement provided by David Fontenot. He stated that Billy Bass was manufacturing methamphetamine. He also stated that Bass was purchasing methamphetamine from Ortiz and Peeler. ¶15 outlines the statement of Peeler in which he also advised that Bass was purchasing methamphetamine from him and Ortiz. This objection is overruled.

The defendant objects to the use of relevant conduct and states that the base offense level should be based on 56.7 grams of methamphetamine. Since *United States v. Booker*, 543 U.S.   , 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) does not abolish relevant conduct under the now advisory Guidelines, an evidentiary hearing will be held to determine the quantity of drugs involved.

The defendant objects to the assessment of 2 points in ¶22. USSG §2D1.1(b)(1) states that "If a dangerous weapon (including a firearm) was possessed, increase by two levels." There is no requirement that the weapon be used. Peeler was in possession of the lock box that contained two .40 caliber pistols and methamphetamine. Codefendant Ortiz was arrested on a Thursday and stated that he had seen Peeler on "Monday" and that he had a .40 pistol at that time. This is sufficient to justify the two point assessment. This objection is overruled.

The defendant's disagreement with the offense levels will be revisited after a hearing on relevant conduct has been held.

The defendant argues that the conviction in ¶35 should not be included as there was no final adjudication of guilt and the judge granted a Motion for Administrative Closure. The evidence shows that the defendant waived his right to be represented by counsel and signed a waiver of counsel on the date of his guilty plea. The defendant pleaded guilty in open court and that plea was recorded. The minutes of the court state that the court "finds that the evidence substantiates the defendant's guilt as to the offense of Criminal Trespass, a misdemeanor." The court ordered, adjudged and decreed that the final adjudication of guilt, assessment of punishment and pronouncement of sentence be deferred during good behavior of the defendant, with the defendant being placed on probation for 12 months.

The definition of conviction includes deferred adjudications, provided there was a finding *or admission* of guilt. U.S.S.G. § 4A1.2(f). § 4A1.2(f), which addresses diversionary dispositions in the computation of criminal history, states:

> "Diversion from the judicial process without a finding of guilt ( *e.g.,* deferred prosecution) is not counted. A diversionary disposition resulting from a finding or

4

admission of guilt, ... in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered, except that diversion from juvenile court is not counted."

The conviction in ¶35 clearly fits this definition as there was an admission of guilt, a finding of sufficient evidence of guilt and a term of probation. In *United States v. Giraldo-Lara*, 919 F.2d 19 (5th Cir.1990), the court held that a "deferred adjudication" counts as a "prior sentence" in the context of computing a criminal history score under § 4A1.2. *U.S. v. Valdez-Valdez*, 143 F.3d 196, 199 (C.A.5 (La.), 1998). This objection is overruled.

The defendant states that, in light of his long history of drug and alcohol abuse, it is appropriate the he be sentenced to a drug treatment facility within the Bureau of Prisons. While all federal prisons now have drug programs, the court will recommend that Peeler be placed in a facility with a more intensive program.

Based upon the defendant's objection to ¶35, he argues that he is qualified for the safety valve. The court, however, overruled the objection to ¶35. The safety valve is not applicable.

The court has considered that the Government filed a 5k1.1 motion for departure based upon the defendant's cooperation.

Lake Charles, Louisiana, this 22 day of March, 2007.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE